IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| WALLACE JONES,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 20-cv-2331-JTF-tmp |

## REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss filed by defendants Keith A. Stutes, District Attorney, 15th Judicial District for Lafayette Parish, Louisiana and Michelle Breaux on June 25, 2020; a Motion to Dismiss filed by defendant Maria West on August 26, 2020; and a Motion to Dismiss filed by defendants State of Louisiana, the Louisiana Department of Justice, Louisiana Attorney General Jeff Landry, former Louisiana Attorney General James D. "Buddy" Caldwell, former Assistant Attorney General Michael Landry, retired Judge Herman Clause, and the Louisiana Department of Children & Family Services on December 30, 2020.[1] (ECF Nos. 27,

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

94, and 135.) Plaintiff Wallace Jones responded to the motions on July 9, 2020; September 14, 2020; and January 19, 2020, respectively. (ECF Nos. 28, 120, and 161.) Defendants Keith A. Stutes, District Attorney, 15th Judicial District for Lafayette Parish, Louisiana and Michelle Breaux filed a reply in support of their motion on July 23, 2020. (ECF No. 50.) For the reasons below, it is recommended that the defendants' motions be granted and that Jones's claims be dismissed with prejudice.

## I.    PROPOSED FINDINGS OF FACT

Plaintiff Wallace Jones lost custody of his two children after a 2012 proceeding in the Louisiana 15th Judicial District Court.[2] (ECF No. 1 at 57.) His factual allegations in the present litigation are that there was a conspiracy by the Louisiana state court system, the federal court system, and the Louisiana state government to kidnap his children. (ECF No. 14 at 55-56.) After losing custody of his children, Jones filed a lawsuit in the United States District Court for the Western District of Louisiana on June 2, 2015, seeking to vacate the state court judgment. During the litigation, Jones moved the district court to grant a preliminary injunction directing the Louisiana Department of Children and Family Services ("DCFS") to provide him with documents

---

[2]The Louisiana 15th Judicial District Court serves Lafayette, Acadia, and Vermillion Parishes. See 15th Judicial District Court, https://15thjdc.org/site.php, (last visited January 22, 2021).

from the state court proceeding, which was denied. Jones v. Louisiana, No. 15-01816, 2016 WL 4059547 (W.D. La. June 17, 2016). The district court ultimately dismissed Jones's complaint for lack of subject matter jurisdiction on September 29, 2016. Jones v. Louisiana, No. 15-01816, 2016 WL 5720623 (W.D. La. Sept. 29, 2016). An appeal to the Fifth Circuit was denied for want of prosecution. Jones v. Louisiana, No. 16-30909, 2017 WL 5495712 (5th Cir. Jan. 10, 2017).

On April 4, 2017, Jones's wife, Candace Sims, filed a lawsuit in the Western District of Louisiana "alleging substantially similar facts, substantially similar claims, and substantially similar relief as Mr. Jones." Sims v. Bethea, No. 6:17-CV-490, 2017 WL 5659969, at *2 (W.D. La. Apr. 10, 2017). The court again dismissed the case for lack of subject matter jurisdiction. Id. In doing so, the court cautioned Sims that should she "file another complaint seeking to reverse, dismiss or invalidate the state court judgment regarding the custody of her children, and if that suit is found to be without jurisdictional basis, she may be cast with costs and attorney's fees, and sanctioned appropriately." Id.

Wallace Jones filed the lawsuit that is currently before the court on May 6, 2020, and amended his complaint on May 26, 2020. (ECF Nos. 1, 14.) Jones styled his amended complaint as:

"An Independent Action in Equity" pursuant to: Rule 60, (b)(6), and Rule 60 (d),(3): Seeking Equitable Relief to set-aside Four Judgments for Fraud Upon the Court,

- 3 -

> amounting to: Fraud on the Court grounded on that of:
> Extrinsic or Intrinsic Fraud, amounting further to: An
> Unconscionable Scheme of Fraudulent Concealment designed
> to mask the existence of: the plaintiff's original cause
> of action, the same Constitutional Substantive Rights
> now before the Court for Equitable review.

(ECF No. 14 at 1.)

Jones named numerous people and state entities as defendants in his complaint, including Maria West, the court reporter during the state court proceedings; Herman Clause, a retired judge who oversaw the state court proceedings; state Attorney General Jeff Landry ("J. Landry"); Michael Landry ("M. Landry"), a former assistant attorney general; Michelle Breaux, an assistant district attorney; former state Attorney General James Caldwell; Cheryl Bethea, an investigator for DCFS; an "Unknown District Court Clerk Louisiana Western Division"; the 15th Judicial District for Lafayette Parish, Louisiana; the Office of the District Attorney; the State of Louisiana "on behalf of the Docket Number 2012-JC-794" ("Louisiana State Court"); the Office of the Attorney General for Louisiana; and DCFS.[3] Jones alleges that the four judgments entered against him were perpetuated by fraud and bribes, and that several agents of the courts (both state and federal) and departments of the State of Louisiana participated in the

---

[3]Jones also named as defendants several parties from his litigation in the Western District of Louisiana and in the Fifth Circuit; however, all of those defendants have since been dismissed. (ECF Nos. 97, 111.)

conspiracy.[4] (ECF No. 14 at 55-56.) His complaint requests that this court immediately vacate the state court judgment and return custody of his children, force several current government employees to resign, garnish the pensions of several retired government employees who were involved in the prior cases, award him upwards of $150 million in damages, and initiate criminal proceedings against the defendants. (ECF No. 14-1 at 87-93.)

On June 25, 2020, defendants Keith A. Stutes, District Attorney, 15th Judicial District for Lafayette Parish, Louisiana ("District Attorney's Office") and Breaux made a special appearance to file a joint motion to dismiss Jones's claims for lack of personal jurisdiction. (ECF No. 27.) Jones responded on July 9, 2020, arguing that the United States Constitution gives federal courts equitable jurisdiction to hear all cases dealing with fraud. (ECF No. 28.) On July 20, 2020, Jones filed his first Motion for Default Judgment. (ECF No. 48.) Three days later, the District Attorney's Office and Breaux replied to Jones's response to their motion to dismiss, repeating the same arguments that federal courts in Tennessee do not have personal jurisdiction over the defendants, all of whom reside in Louisiana and have no contacts with Tennessee. (ECF No. 50.) That same day, Jones filed

---

[4]Jones appears to be referring to the state court judgment, the two Western District of Louisiana decisions, and the Fifth Circuit decision.

his first Motion for Entry of Default. (ECF No. 51.) To date, he has filed twenty-one motions for entry of default and two motions for default judgment, which are the subject of a separate Report and Recommendation. (ECF Nos. 48, 53, 55, 60, 67-74, 84-91, 93, 119, 131.) In the meantime, coupled with her response to Jones's motion for default judgment, West filed a motion to dismiss on August 26, 2020. (ECF No. 94-96.)

The Louisiana State Court, J. Landry, M. Landry, Clause, Caldwell, and DCFS ("the State Court Defendants") filed a motion for an extension of time to file an answer on August 5, 2020. (ECF No. 64.) Subsequently, on August 31, 2020, the State Court Defendants filed a motion for an extension of time to file a motion to dismiss. (ECF No. 100.) On December 17, 2020, the undersigned granted the two motions for an extension of time, and the State Court Defendants filed a motion to dismiss on December 30, 2020. (ECF Nos. 132, 135.) While each motion to dismiss contains slightly different arguments, many of the arguments overlap.[5] (ECF Nos. 27, 95, and 135.) First, Breaux and the District Attorney's Office move to dismiss Jones's complaint solely for lack of personal jurisdiction. (ECF No. 27.) Second, West moves to dismiss Jones's complaint for lack of personal jurisdiction, for lack of subject

---

[5] Upon review of the docket, it appears that every remaining defendant has moved for dismissal except for Cheryl Bethea and "Unknown District Court Clerk Louisiana Western Division."

matter jurisdiction, for improper service, for improper venue, and for failure to state a claim upon which relief can be granted. (ECF No. 95.) Finally, the State Court Defendants move to dismiss Jones's complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and for improper service. (ECF No. 135.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Personal Jurisdiction

The undersigned submits that this court does not have personal jurisdiction over any of the defendants. Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of a claim for lack of personal jurisdiction. The plaintiff bears the burden of establishing jurisdiction. See Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a *prima facie* showing of jurisdiction." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)). A *prima facie* showing of jurisdiction may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. Theunissen, 935 F.2d at 1458. In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." Bird, 289 F.3d at 871. This requirement,

- 7 -

however, does not require the court "to ignore undisputed factual
representations of the defendant which are consistent with the
representations of the plaintiffs." Kerry Steel, Inc. v. Paragon
Indus., Inc., 106 F.3d 147, 153 (6th Cir. 1997).

Every defendant has raised lack of personal jurisdiction as
a basis for dismissal. "The court may maintain jurisdiction over
a non-resident defendant only in accordance with the forum state's
long-arm statute and the limitations of the Due Process Clause of
the United States Constitution." Glassman, Edwards, Wade & Wyatt,
P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP, 601 F. Supp.
2d 991, 1002 (W.D. Tenn. 2009) (citing Reynolds v. Int'l Amateur
Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994) and Proctor &
Gamble Cellulose Co. v. Viskoza-Loznica, 33 F. Supp. 2d 644, 660
(W.D. Tenn. 1998)). If the forum state's long-arm statute "extends
to the limits of the due process clause, the two inquiries are
merged and the court need only determine whether exercising
personal jurisdiction violates constitutional due process."
Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472,
477 (6th Cir. 2003) (citing Nationwide Mut. Ins. Co. v. Tryg Int'l
Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996)). Because the Sixth
Circuit has held that "Tennessee law extends its jurisdiction to
due process's limits," the court need only address whether
exercising personal jurisdiction over the defendants is consistent
with federal due process requirements. Parker v. Winwood, 938 F.3d

833, 839 (6th Cir. 2019) (citing Bridgeport Music, Inc., 327 F.3d
at 477).

Consistent with the due process clause, courts can exercise
personal jurisdiction over a defendant so long as that defendant
has "certain minimum contacts" with the forum state such that the
exercise of personal jurisdiction "does not offend traditional
notions of fair play and substantial justice." Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945). There are two constitutional
varieties of personal jurisdiction, depending on the nature of the
defendant's contacts with the forum state: general and specific
jurisdiction. Parker, 938 F.3d at 839 (citing Daimler AG v. Bauman,
571 U.S. 117, 127 (2014) and Burger King Corp. v. Rudzewicz, 471
U.S. 462, 472 (1985)). General jurisdiction arises when "a
defendant's contacts with the forum state are of such a continuous
and systematic nature that the state may exercise personal
jurisdiction over the defendant even if the action is unrelated to
the defendant's contacts with the state." Third Nat'l Bank v. WEDGE
Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). Specific
jurisdiction arises when the defendant has sufficient minimum
contacts with the forum state that are related to the cause of
action. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir.
2000). The plaintiff must establish that: (1) the defendant
purposefully availed himself of the privilege of acting in the
forum state or intentionally caused a consequence in the forum

state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. Id.; see also Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001); Aristech Chem. Inter Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 628 (6th Cir. 1998); Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). Purposeful availment is the most important criterion. Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 150 (6th Cir. 1997). The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp., 471 U.S. at 475 (1986).

Here, every defendant who is an individual is a Louisiana resident and the remaining defendants are subdivisions of the Louisiana state government.[6] (ECF Nos. 27-1, 95-1, 135 at 8 n.39.)

---

[6]This is illustrated by the fact that the summonses for the remaining defendants that appear in the record each contain a Louisiana address. See (ECF Nos. 16, 16-1, 16-4, 16-5, 16-8, 16-9, 16-10, 16-11, and 16-12.)

Thus, the court does not have general jurisdiction over the defendants because none of the defendants can be considered "at home" in Tennessee. See Malone v. Stanley Black & Decker, Inc., 965 F.3d 499, 502 (6th Cir. 2020) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Further, Jones does not allege any contacts by any of the defendants with the state of Tennessee and, in any event, all of the actions underlying Jones's complaint (i.e. the custody dispute and any alleged fraud thereafter in the federal court system) appear to have occurred in Louisiana. See Calphalon Corp., 228 F.3d at 721 ("[P]urposeful availment . . . is essential to a finding of personal jurisdiction") (citing LAK, Inc. v. Deer Creek Enters., 885 F.2d 1293, 1300 (6th Cir. 1989)). Indeed, Jones's complaint states that he chose this district as his forum because it is "the highest court of the State where the plaintiff resides" and because it would be prejudicial for him to sue in Louisiana courts as his cause of action concerns "state and federal courts that span the entire state of Louisiana." (ECF No. 14 at 3-4.) Jones repeats this theory in his response to Breaux's and the District Attorney's Office's motion to dismiss for lack of personal jurisdiction, where he argues that the defendants "purposefully availed" themselves of Tennessee law by virtue of him filing the complaint in a Tennessee forum and by adjudicating the custody rights of Tennessee citizens. (ECF No. 28 at 7-8.) The fact that Jones is a resident of Tennessee

- 11 -

and brought suit in this state does not create personal jurisdiction over the defendants. See Days Inn Worldwide, Inc., 445 F.3d at 904 ("Personal jurisdiction must be analyzed and established over each *defendant* independently." (emphasis added)) (citing Burger King Corp., 471 U.S. at 475). As a result, specific jurisdiction is lacking as well. Thus, this court does not have personal jurisdiction over any of the defendants, and the undersigned recommends that Jones's claims be dismissed with prejudice.[7]

**B.    Subject Matter Jurisdiction**

Additionally, the undersigned submits that this court does not have subject matter jurisdiction to hear Jones's claims. Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court

---

[7]For similar reasons, the undersigned submits that the Western District of Tennessee is not a proper venue to hear this action, though only West raises this argument. In the absence of a special venue provision, 28 U.S.C. § 1391 controls a plaintiff's choice of venue in civil cases. Venue in federal court is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3). As the undersigned described above, all of the defendants reside in Louisiana and all of the events leading to this lawsuit occurred in Louisiana. Thus, none of the provisions in 28 U.S.C. § 1391(b) apply to the Western District of Tennessee.

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may challenge the complaint on its face or the existence of jurisdiction in fact. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 890-91 (3d Cir. 1977)). If the challenge is facial, "the court must consider the allegations of the complaint as true." Id. (quoting Mortensen, 549 F.2d at 890-91). If the challenge is based on the existence of jurisdiction in fact, the court will evaluate the merits of the jurisdictional claims and the plaintiff bears "the burden of proof that jurisdiction does in fact exist." Id. (quoting Mortensen, 549 F.2d at 890-91).

It is well-established that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); see also Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); Ins. Corp. of Ireland,

- 13 -

Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982)
("Federal courts are courts of limited jurisdiction. The character
of the controversies over which federal judicial authority may
extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the
lower federal courts is further limited to those subjects
encompassed within a statutory grant of jurisdiction."). Federal
courts are obligated to act *sua sponte* whenever a question about
jurisdiction arises. See Ins. Corp. of Ireland, Ltd., 456 U.S. at
702 ("[A] court, including an appellate court, will raise lack of
subject-matter jurisdiction on its own motion.").

The undersigned notes that only West and the State Court
Defendants moved to dismiss Jones's complaint for lack of subject
matter jurisdiction pursuant to Rule 12(b)(1). However, because
federal courts have the authority to raise subject matter
jurisdiction issues *sua sponte* and because Jones has had multiple
opportunities to respond to the subject matter jurisdiction
arguments, the undersigned will construe the Rule 12(b)(1)
arguments as encompassing all of the remaining defendants where
applicable. See United States v. McDougal, 368 F. App'x 648, 653
(6th Cir. 2010) (quoting Answers in Genesis of Ky., Inc., 556 F.3d
at 465) ("While McDougal himself does not raise this argument,
'federal courts have a duty to consider their subject matter
jurisdiction in regard to every case and may raise the issue *sua
sponte*.'").

1. <u>The Rooker-Feldman Doctrine</u>

This court is prescribed from hearing Jones's claims by the <u>Rooker-Feldman</u> doctrine. "[L]ower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." <u>Gottfried v. Med. Planning Servs., Inc.</u>, 142 F.3d 326, 330 (6th Cir. 1998) (citing <u>D.C. Ct. App. v. Feldman</u>, 460 U.S. 462, 476 (1983) and <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 415-16 (1923)). This doctrine, known as the <u>Rooker-Feldman</u> doctrine, establishes that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." <u>Pieper v. Am. Arbitration Ass'n, Inc.</u>, 336 F.3d 458, 462 (6th Cir. 2003) (citations omitted).

The purpose of the doctrine is to prevent parties who did not prevail at the state court level from "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>VanderKodde v. Mary Jane M. Elliott, P.C.</u>, 951 F.3d 397, 402 (6th Cir. 2020) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)); see <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005-06 (1994) (holding that a non-prevailing state court litigant cannot seek "what in substance would be appellate review of the state judgment in a United States

district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

In order to determine if the Rooker-Feldman doctrine is applicable, a court must ask "whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." Lawrence v. Welch, 531 F.3d 364, 368 (6th Cir. 2008). "If the source of injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction." Id. (quoting McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006)). On the other hand, if the federal plaintiff "asserts an independent claim" from the state court judgment itself, then the doctrine does not preclude federal jurisdiction. Brown v. First Nationwide Mortg. Corp., 206 F. App'x 436, 439 (6th Cir. 2006). The court must consider the plaintiff's requested relief when determining the source of the plaintiff's injury. VanderKodde, 951 F.3d at 402 (citing Berry v. Schmitt, 688 F.3d 290, 299 (6th Cir. 2012)).

Jones's claims regarding the underlying state court judgment run afoul of the Rooker-Feldman doctrine. Jones's complaint requests that this court set aside the Louisiana state court judgment, award damages upwards of $150 million because of the state court judgment, force the resignation of several defendants because of their role in procuring the state court judgment and subsequently affirming it, garnish the pension of several

- 16 -

defendants who participated in procuring the state court judgment
but have since retired, and prosecute the defendants for their
actions in procuring the state court judgment. (ECF No. 14-1 at
87-93.) Each claim for relief stems directly from the state court
judgment. See Kost v. Hoseth Kreeger, 932 F. App'x 438, 439 (6th
Cir. 2021) (affirming dismissal pursuant to the Rooker-Feldman
doctrine where the plaintiff's requested relief was "declaratory
and/or injunctive relief after finding that actions, outcome,
and/or judicial decision by Defendant [Judge] SUZANNE HOSETH
KREEGER violates the Fifth and/or Fourteenth Amendments to the
United States Constitution and enjoin/invalidate the same");
Cunningham v. Dep't of Children's Servs., No. 20-5216, 2021 WL
118413, at *3 (6th Cir. Jan. 13, 2021) (holding that the Rooker-
Feldman doctrine precluded federal review of injuries stemming
from a state juvenile court order, though not necessarily from
"the defendants' conduct in the preparation and issuance of the
order" (emphasis omitted)) (citing Reguli v. Guffee, 371 F. App'x
590, 595-96 (6th Cir. 2010)). By way of example, Jones alleges
that Clause "abused his discretion by the use of the Improper
Material Factors by failing to perform his [Judicial Function] to
dismiss a [Perjured] petition" and failed to follow Louisiana state
child custody laws; that West failed to list certain dates in her
transcript of a hearing before the state court; and that Breaux
"filed and prosecuted the petition docket number 2012-JC-794

- 17 -

without an []Act or Omission[].” (ECF No. 14 at 41, 47.) In order
for this court to grant any of the above relief (to the extent
this court even has the authority to do so), this court would have
to review the validity of the state court judgment in an appellate
capacity. See, e.g., Meitzner v. Young, No. 16-1479, 2016 WL
11588383, at *2 (6th Cir. Oct. 25, 2016) (affirming a district
court’s dismissal pursuant to the Rooker-Feldman doctrine where a
plaintiff brought suit in federal court to attack a state court
order, alleging “the Michigan COA falsif[ied] their basis to
affirm, denying the Appellant a fair judicial process. The instant
suit stems from their failure to correct an obvious wrong”).

Moreover, the undersigned notes that Jones’s claims have
already been dismissed from federal court twice under the Rooker-
Feldman doctrine and his wife has been warned that filing future
lawsuits (such as the one before the court) “to reverse, dismiss
or invalidate the state court judgment regarding the custody of
her children” might warrant sanctions. Sims, 2017 WL 5659969, at
*2 (filed by Jones’s wife and pleading “substantially similar
facts, substantially similar claims, and substantially similar
relief”); Jones, 2016 WL 5720623, at *3. Like his pursuits in
federal court before, the undersigned submits that the Rooker-
Feldman doctrine precludes this court from hearing Jones’s claims.

2.    Jurisdiction to Review Federal Court Orders

Jones also appears to be requesting that this court review judgments rendered by the Western District of Louisiana of Louisiana and the Fifth Circuit. Federal district courts do not have jurisdiction to review past orders from other district courts absent extraordinary circumstances. See, e.g., Elliott v. Chairman of the U.S. Merit Sys. Protection Bd., No. 2:17-CV-47, 2017 WL 6102809, at *2 (E.D. Tenn. Dec. 6, 2017) (dismissing on other grounds but noting "the Court's ability to exercise subject matter jurisdiction over this case — which, according to Mr. Elliott's allegations, derives from proceedings before the Eastern District of Virginia and the Fourth Circuit — is dubious"); Laues v. Roberts, No. 2:14-CV-12313, 2015 WL 1412631, at *4-5 (E.D. Mich. Mar. 25, 2015) ("[T]his Court lacks jurisdiction to address the Laueses' challenges to Judge Roberts' prior rulings in Laues I"); United States v. Westine, No. 14-10, 2014 WL 7004930, at *3 (E.D. Ky. Dec. 10, 2014) ("[T]his Court has no jurisdiction to upset or review a past judgment issued by another District Court"); Dana Corp. v. Fireman's Fund Ins. Co., Nos. 3:83CV1153, 3:85CV7491, 1997 WL 135591, at *2 (N.D. Ohio Feb. 10, 1997) ("One district court has no such jurisdiction over another district court. . . . I am unaware of any jurisdictional grant by Congress that authorizes one district court to sit in review of judgments by another district court.") (citing Graves v. Sneed, 541 F.2d 159, 161 (6th Cir. 1976)). Jones's complaint appears to request that

- 19 -

this court review the validity of several judgments entered by the Western District of Louisiana and the Fifth Circuit. There, the district court ultimately dismissed Jones's case for running afoul of the Rooker-Feldman doctrine. Jones v. Louisiana, No. 6:15-CV-1816, 2016 WL 5720623, at *3 (W.D. La. Sept. 29, 2016). While Jones appealed the decision to the Fifth Circuit, his appeal was dismissed for want of prosecution. Jones v. Louisiana, No. 16-30909, 2017 WL 5495712 (5th Cir. Jan. 10, 2017). Any relief sought from this court would require review of the validity of the district court and Fifth Circuit judgments. "Whatever the plaintiffs have styled their action, plaintiffs' suit is nothing more than a horizontal appeal taken to a district court of another district court's decision and of a decision rendered by an appellate court," and, as such, the undersigned submits that this court does not have subject matter jurisdiction to conduct such a review. Baier v. Parker, 523 F. Supp. 288, 290 (M.D. La. 1981).

   3.  Eleventh Amendment Immunity

    Further, many of the named defendants are immune from Jones's claims pursuant to the Eleventh Amendment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under Sixth Circuit precedent, "the Eleventh

Amendment is a true jurisdictional bar that courts can — but are not required to — raise *sua sponte* at any stage in litigation, and, once raised as a jurisdictional defect, must be decided before the merits." Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015). As such, federal courts do not have subject matter jurisdiction to hear claims "when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." Id. Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

Immunity provided by the Eleventh Amendment is extensive. Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993). "It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its department, by citizens of another state, foreigners, or its own citizens." Id. (internal citations omitted); see also Abdalla v. Tenn. Dep't of Corrections, No. 2:20-cv-02041, 2021 WL 27305, at *2 (W.D. Tenn. Jan. 4, 2021) ("The Eleventh Amendment applies to state agencies and departments.") (citing Boler v. Earley, 865 F.3d 391, 409-10 (6th Cir. 2017)). The only exceptions are "1) where a state has itself waived its immunity from federal suit;

and 2) where Congress has abrogated the states' immunity."[8] Thiokol
Corp., 986 F.2d at 381. Neither of these circumstances has occurred
in this case.

Jones has named the Louisiana State Court, the Office of the
Attorney General, and DCFS as defendants. These defendants are all
arms of the state of Louisiana, and thus cannot be subject to suit
in federal court. Holliday v. Bd. of Supervisors of LSU Agric. &
Mech. College, 2014-CC-0585 (La. 2014), 149 So.3d 227, 229 ("While
Louisiana may have waived sovereign immunity with respect to some
claims, La. Const. Art. 1 § 26 makes it clear the State has not
waived its sovereignty within the federal system."). Additionally,
Clause, Caldwell, M. Landry, J. Landry, and Bethea have all been
sued for actions taken in their official capacity as state
officials and representatives of the state.[9] See Thiokol Corp.,

---

[8]Some courts consider the Ex Parte Young doctrine as a third
exception. See Boler, 865 F.3d at 410. Under Ex Parte Young, the
state does not have sovereign immunity for "claims for prospective
relief against state officials sued in their official capacity to
prevent future federal constitutional or statutory violations."
Id. at 412. Like the other two exceptions to Eleventh Amendment
immunity, the Ex Parte Young doctrine does not apply to this case.

[9]As an aside, the undersigned submits that Clause is also immune
from suit under the doctrine of judicial immunity. Mireles v. Waco,
502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the
highest importance to the proper administration of justice that a
judicial officer, in exercising the authority vested in him, shall
be free to act upon his own convictions, without apprehension of
personal consequences to himself." (quoting Bradley v. Fisher, 13
Wall. 335, 347 (1872)). Judicial immunity can only be overcome in
two circumstances: where a judge acts outside of his official
capacity and where he acts "in the complete absence of all

987 F.2d at 381 ("The amendment also bars suits for monetary relief against state officials sued in their official capacity."). The undersigned submits that Eleventh Amendment immunity bars suit against the above listed defendants.

    4. <u>Apple v. Glenn</u>

The Sixth Circuit has held that federal courts lack subject-matter jurisdiction over complaints that are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion[.]" <u>Apple v. Glenn</u>, 183 F.3d 477, 479 (6th Cir. 1999). Allegations of this nature lack "legal plausibility necessary to invoke federal subject matter jurisdiction." <u>Id.</u> at 480; <u>see also</u> <u>Young v. FedEx Employees Credit Ass'n</u>, No. 19-CV-2313-TLP-tmp, 2019 WL 7669173, at *7 (W.D. Tenn. Sept. 17, 2019), <u>report and recommendation adopted</u>, 2019 WL 5268564 (W.D. Tenn. Oct. 17, 2019).

Jones's complaint meets the <u>Apple v. Glenn</u> standard. <u>See</u> <u>Hassink v. Mottl</u>, 47 F. App'x 753, 755 (6th Cir. 2002) (dismissing a claim for lack of subject matter jurisdiction under <u>Apple v. Glenn</u> because "conclusory allegations of a conspiracy are not sufficient to state a claim under § 1983"). The Sixth Circuit recently considered a similar fact pattern in <u>Meitzner v. Young</u>.

_____

jurisdiction." <u>Id.</u> at 11-12. Because neither of these circumstances is applicable here, the undersigned submits that Clause is immune from suit for any of his conduct during the state court proceedings.

No. 16-1479, 2016 WL 11588383 (6th Cir. Oct. 25, 2016). There, the plaintiff alleged that the Michigan Supreme Court conspired against him when it declined to vacate an injunction issued against him in a property dispute. Id. The Sixth Circuit held that it was proper for the district court to dismiss the plaintiff's complaint for lack of subject matter jurisdiction because the claims against the justices were patently frivolous. Id.; see also Veasley v. Bryant, No. 14-2558-JDT-tmp, 2014 WL 4057146, at *5 (W.D. Tenn. Aug. 14, 2015) ("[V]ague, attenuated and unsubstantial allegations . . . are insufficient to establish subject matter jurisdiction in this court."). Jones's complaint contains wholly unsubstantiated allegations that the Louisiana state court proceedings were fraudulent and that the courts since then have engaged in an extensive conspiracy to cover up any wrongdoing. The Apple v. Glenn doctrine precludes Jones from pursuing these claims in this court.

### III. RECOMMENDATION

For the above reasons, the undersigned recommends that the defendants' motions to dismiss be granted and Jones claims be dismissed with prejudice.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

January 26, 2021
Date

- 24 -

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**